IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JEFFREY EUGENE MCMAHON | ) | |
| | ) | |
| v. | ) | No. 3:08-0624 |
| | ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) | |

To:     The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 18), to which defendant has responded with its own motion for judgment on the pleadings (Docket Entry No. 22).[1] Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 16),[2] and for the reasons given below, the undersigned recommends that plaintiff's motion be DENIED, that defendant's motion for judgment on the pleadings be GRANTED, and that the decision of the SSA be

---

[1] For purposes of future filings, defendant is reminded that the undersigned's scheduling order in these cases (Docket Entry No. 17) directs the filing of *a brief in response* to plaintiff's motion, not the government's own cross-motion for judgment.

[2] Referenced hereinafter by page number(s) following the abbreviation "Tr."

1

AFFIRMED.

## I. Introduction

Plaintiff filed his DIB application on October 21, 2004, alleging disability due to congestive heart failure, diabetes, knee pain and obesity (Tr. 51-53, 62). The application was denied at both the initial and reconsideration stages of state agency review (Tr. 34-35, 38-40; 36-37, 43-44). Thereafter, plaintiff requested and received a *de novo* hearing of his case by an Administrative Law Judge ("ALJ"), held on March 28, 2007 (Tr. 430-43). Plaintiff appeared at the hearing with his non-lawyer representative, and testimony was received from both plaintiff and an impartial vocational expert ("VE"). At the conclusion of the hearing, the ALJ closed the record and took the matter under advisement, until May 11, 2007, when he issued a written decision finding plaintiff not disabled. That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

2. The claimant has not engaged in substantial gainful activity since October 21, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe combination of impairments: obesity, type II diabetes, high blood pressure, and congestive heart failure (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally and frequently lift 10 pounds, with sit/stand at will option. No use of foot controls. Avoid

climbing and crawling. Avoid concentrated exposure to temperature extremes (heat and cold), humidity, noise, dust, or vibration. He should not work around unprotected heights or moving machinery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 24, 1966 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 4045.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2004 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 19, 21, 23, 24)

On April 17, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 4-7), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. <u>Id.</u>

3

Case 3:08-cv-00624   Document 24   Filed 07/21/09   Page 3 of 15 PageID #: 94

## II. Review of the Record[3]

### A. Hearing Testimony and Other Evidence

Plaintiff was born in March 1966, making him 41 years old at the time of the ALJ's decision (Tr. 51, 57). Plaintiff had an 11th grade education (Tr. 67, 533) and had past relevant work (PRW) as a truck driver and construction painter (Tr. 23, 63-64, 87-89, 435). In describing his complaints, plaintiff claimed that he could only walk ½ block before needing to rest and could only stand for 15 minutes at a time uninterrupted (Tr. 21, 437-438). In terms of activities of daily living (ADL's), plaintiff cared for his personal needs, took care of his daughter, cleaned his rooms, washed clothes, prepared meals, drove, shopped, paid bills, visited with friends and relatives, talked on the telephone, attended sporting events, went to the race track and watched television (Tr. 71-73, 95-98). Plaintiff and his daughter lived with his mother in her house (Tr. 69-70, 78, 95). An impartial vocational expert (VE) testified at the hearing on March 28, 2007 (Tr. 434-35, 440-42). The VE was asked in a hypothetical question to consider the availability of work for an individual of plaintiff's age, education, and past work experience, who was limited to sedentary work,[4] with sitting for up to 6/8 hours in a day, standing/walking for 4/8 hours in a day and a sit/stand at will option; with no use of foot controls on a regular basis; avoiding climbing and crawling and avoiding any routine exposure to heat, humidity, noise, dust, vibration, odors,

---

[3]The following record review is taken from defendant's brief (Docket Entry No. 23 at 3-8), with only minor modification by the undersigned.

[4]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. § 404.1567.

4

chemicals, heights and moving machinery (Tr. 21, 441). In response, the VE noted that such an individual could perform sedentary level jobs such as: information clerk (1,700 locally/94,000 nationally); interviewer (1,000 locally/47,000 nationally) and office clerk (1,000 locally/60,000 nationally) (Tr. 441-42).

B. Medical Evidence

In June 2001, plaintiff was seen by treating physician Dr. John Jordan following an emergency room visit for shortness of breath (SOB), difficulty breathing, coughing, fatigue and feeling bad (Tr. 153). X-rays showed cardiomegaly and fluid in the lungs. Id. A known hypertensive, plaintiff reported that he had not taken his medication for approximately 3 years because he traveled a lot for his job, and that he was concerned about his weight and he did not exercise regularly but was active at work. Id. On exam, Dr. Jordan opined that plaintiff had poor air movement in his lungs with no wheezes or rhonchi, diagnosed him with SOB, hypertension, fatigue, obesity and cardiomegaly and treated him with medication. Id. In a follow-up appointment, plaintiff reported feeling better (Tr. 152). Medications were continued and he was referred to a cardiologist. Id. Other than medication refills, plaintiff did not return to Dr. Jordan for more than a year, until August 2002, to discuss gastric bypass and medications (Tr. 150-51).

On January 20, 2003, plaintiff was seen by a cardiologist, Dr. Taylor Wray, for complaints of chest pain (Tr. 126-27). Plaintiff reported that he had fleeting episodes of pain that had no relationship to activity, which he thought were panic attacks, and that he continued to work long hours (Tr. 126). Dr. Wray noted that an earlier echocardiogram showed a marked improvement. Id. On exam, Dr. Wray noted that plaintiff was morbidly obese (425 pounds), in no acute distress, had mildly diminished breath sounds and no rales,

rhonchi or wheezes, moderately severe varicosities of the left leg and milder ones on the right, and had a normal EKG (Tr. 126). Dr. Wray opined that plaintiff had dilated cardiomyopathy with well-compensated heart failure, possibly due to hypertension, and further that he had hypertensive heart disease and noncardiac chest pain. He reviewed plaintiff's medications and noted that plaintiff was a good candidate for intestinal bypass (Tr. 127). Eleven months later, in November 2003, Dr. Wray made essentially the same findings on exam (Tr. 124-25).

In December 2003, plaintiff returned to Dr. Jordan regarding a diagnosis of diabetes and to discuss diet and exercise (Tr. 149). The following week, plaintiff reported that he had made changes to his diet, that his job was sedentary and that he did not exercise (Tr. 148). Dr. Jordan encouraged plaintiff to begin moderate exercise and walking to build up his endurance. Id. Ten days later, plaintiff reported that he had walked every night for exercise, his headaches had resolved and his energy level had improved (Tr. 147). The following month, plaintiff reported that he increased his daily walk, he lost weight due to the change in diet, and that he was feeling great with an improved energy level (Tr. 146). For the next several months, plaintiff continued to lose weight and reported doing well (Tr. 143-45).

Dr. Wray's re-evaluation of plaintiff in September 2004 yielded essentially the same findings as before (Tr. 122-23, 124-25). Dr. Wray noted that despite plaintiff's diagnosis of diabetes in late 2003 (Tr. 128), plaintiff reported that he had lost at least 75 pounds, "feels great," and that his breathing was much better (Tr. 122). Plaintiff again had a normal EKG (Tr. 130).

On January 18, 2005, at the request of the state agency's Disability

Determination Services (DDS), Dr. Bruce Davis conducted a consultative evaluation (Tr. 131-34). In his report, Dr. Davis found, based upon examination and plaintiff's objective medical findings, that plaintiff was obese and in no acute distress (Tr. 131). On exam, Dr. Davis noted that plaintiff's blood pressure was treated with medication, that he complained of weakness and fatigue, he could walk one level block and climb a flight of steps, he had clear breath, normal heart sounds and had no edema. Id. With regard to plaintiff's knee pain, Dr. Davis noted that there was no tenderness or swelling in his knees and he had normal flexion and extension, normal gait, normal heel/toe and tandem walking and incomplete squatting. Id. The pulmonary function test was essentially normal and showed that plaintiff had a FEV1 of 3.88 without the use of a bronchodilator (Tr. 132-34).

On February 2, 2005, a DDS physician conducted a residual functional capacity (RFC) assessment based upon a review of the medical evidence of record and found that plaintiff was essentially capable of work at the medium level of exertion. (Tr. 135-40)

On September 9, 2006, plaintiff went to the emergency room with stomach pain (Tr. 163-426). Diagnosed with acute appendicitis, plaintiff underwent surgery and was discharged five days later in good condition (Tr. 164-65, 189). During his hospital stay, plaintiff had normal EKG's (Tr. 164), his chest x-rays showed no evidence of acute cardiopulmonary disease (Tr. 422), and sleep apnea was suspected, though plaintiff denied experiencing many of its symptoms (Tr. 192).

On January 19, 2007, Dr. Davis conducted a second consultative examination at the request of the DDS (Tr. 155-57) and completed a Medical Source Statement of Ability to do Work-Related Activities (Tr. 168-61). In his report, Dr. Davis found, based upon his examination and plaintiff's objective medical findings, that plaintiff could frequently and

7

occasionally lift 10 pounds, stand/walk for less than 4/8 hours per day with less than one hour of uninterrupted standing/walking, sit for about 6/8 hours per day, had limited pushing/pulling with the lower extremities, could never crawl and could occasionally perform all other postural activities (Tr. 158-59). Dr. Davis further found that plaintiff should limit his exposure to temperature extremes, noise, dust, humidity, vibration and hazards (Tr. 161). Dr. Davis reported that: plaintiff had been obese for more than 15 years; he was then at his heaviest (470 pounds) and not on a supervised weight loss program (Tr. 155); his 3- to 4-year history of diabetes was treated and controlled with oral medication; his 5-year history of elevated blood pressure was treated and controlled with medication; his bilateral knee and left ankle pain was treated only with rest and that his alleged sleep apnea was awaiting diagnostic testing. Id. On exam, Dr. Davis found that plaintiff had SOB after light exam maneuvers, clear breath sounds, full motion and good strength in the neck and both upper extremities, full (5/5) grip strength, negative straight leg raising, bilateral knee crepitation with normal knee flexion, incomplete squatting and normal gait with slow gait maneuvers across the exam room (Tr. 156). Dr. Davis opined that plaintiff's medical conditions (class 3 extreme obesity, type 2 diabetes mellitus, cardiovascular disease, knee and ankle pain and suspected sleep apnea) were chronic and that regular medical maintenance and supervised weight loss was warranted (Tr. 157).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the

correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed

9

impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined

10

effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff alleges four errors in the ALJ's decision, though the first three distill to the same basic contention: that despite adopting without qualification the functional capacity assessment of consultative examiner Dr. Davis, the ALJ varied from that assessment when posing his hypothetical to the vocational expert by describing plaintiff as limited to "no more than" four hours of standing/walking total and one hour uninterrupted, rather than echoing Dr. Davis's assessment of restrictions to *less than* four total hours of standing/walking per eight-hour day, and *less than* one hour of uninterrupted standing/walking. According to plaintiff, this mischaracterization amounts to reversible error because (1) it undermines the reliability of the VE's testimony identifying the job of "information clerk" as among the available jobs which plaintiff could perform; (2) it amounts to an unexplained rejection of Dr. Davis's true opinion regarding plaintiff's ability to stand/walk; and, (3) its prejudicial character is not necessarily cured by the ALJ's finding that plaintiff must be allowed the option to change positions between sitting and standing at will. Finally, plaintiff alleges that the ALJ improperly discounted the credibility of his subjective complaints. For the reasons that follow, the undersigned finds no merit in plaintiff's contentions, but rather substantial evidentiary support for the decision of the ALJ.

In the first place, the ALJ plainly did not intend to reject any of Dr. Davis's opinions, but indeed expressly adopted those opinions in his written decision, where they

11

were correctly related (Tr. 20, 23). This included Dr. Davis's opinion that "[t]he claimant can walk/stand less than 1 hour uninterrupted, less than 4 hours in an 8 hour workday." (Tr. 20) Thus, there was no rejection of that opinion for the ALJ to explain.

Nor does there appear to be any inconsistency between this assessed limitation and the Dictionary of Occupational Titles' ("DOT") description of the sedentary job requirement of standing/walking up to one-third (or 2.67 hours) of an 8-hour day. Of note, Dr. Davis's assessment indicates his belief that plaintiff's ability to stand/walk lies between "at least 2 hours" and "[less than] 4 hours" (Tr. 158). The "up to" two hours and forty minutes of standing/walking per 8-hour day required under the DOT definition of sedentary work is entirely consistent with the range described by 'at least 2 but less than 4.' While plaintiff further appears to complain that his limitation to less than one hour of uninterrupted standing/walking is not accommodated under the DOT description of sedentary jobs such as that of information clerk, which he argues "would require a worker to be on his feet throughout much of the day" (Docket Entry No. 19 at 9), the undersigned must disagree. In fact, the DOT provides that "[s]edentary work involves sitting most of the time, but may involve walking or standing for *brief periods* of time" which, in the aggregate, may amount to a maximum of one-third of the 8-hour workday. Id. at Exh. 1, p. 1. (emphasis added) Thus, it does not appear that the information clerk or other sedentary jobs identified by the VE would have been contraindicated under Dr. Davis's assessment of plaintiff's capacity for standing/walking.

Particularly with plaintiff's undisputed ability to sit for about 6 out of 8 hours, and the VE's identification of the information clerk and other sedentary jobs' allowance for

12

alternating between sitting and standing at will, the difference between the limitation on standing/walking something "less than" four hours (one uninterrupted) and standing/walking for "no more than" four hours (one uninterrupted) cannot be said to infect the ALJ's step five finding with prejudicial error. Cf. Rowe v. Railroad Retirement Bd., 114 Fed.Appx. 189, 193 (6th Cir. Nov. 9, 2004). Rather, the error in the ALJ's question to the VE was harmless, and the ALJ was entitled to rely on the resulting expert testimony to satisfy the SSA's step five burden.

Finally, plaintiff argues that the ALJ erred in failing to adequately explain his rejection of plaintiff's subjective complaints of disabling fatigue. In so arguing, plaintiff suggests that the ALJ found his statements "not entirely credible" without offering any particular explanation for that finding. The undersigned reads the ALJ's decision quite differently. To begin with, it is undisputed that plaintiff's obesity, congestive heart failure and related impairments could reasonably be expected to produce plaintiff's symptoms. (Tr. 22) In analyzing plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms, the ALJ tracked the language of the governing regulation, 20 C.F.R. § 404.1529(c), and rulings, S.S.R. 96-7p and S.S.R. 02-1p. In so doing, the ALJ noted plaintiff's testimony that he experienced severe fatigue with exertion, especially with prolonged standing or walking, and his testimony that he took three naps per day. (Tr. 21, 437-38)[5] He further noted that plaintiff's symptoms were aggravated when he failed to follow an appropriate diet and exercise program, and that plaintiff understood that his symptoms

---

[5]Notably, plaintiff does not allege daytime somnolence, or that he requires these naps in order to maintain a minimal activity level; he merely testified that he took several naps during the day. (Tr. 438)

13

would ease when he lost weight by dieting and exercising. (Tr. 22) These factors were considered on the heels of the ALJ's review of Dr. Davis's report, in which it was noted that plaintiff's weakness/fatigue and shortness of breath had improved with medical treatment since 2001. (Tr. 20, 155) Nonetheless, despite relatively minor complaints of pain and a largely normal musculoskeletal exam, plaintiff was deemed capable of only minimal, sedentary exertion by Dr. Davis and, subsequently, the ALJ. Thus, it is clear that plaintiff's level of fatigue with exertion due to his congestive heart failure and related obesity drove the ALJ's determination of his ability to perform only the range of sedentary work that allows an option to sit or stand at will, among other exertional, postural and environmental accommodations. In the absence of any medical evidence supporting a greater degree of limitation, and on this record supporting the notion that compliance with plaintiff's diabetic diet and commitment to regular exercise dramatically improves his energy level and sense of wellbeing, the ALJ's reasoning in rejecting plaintiff's claim of total disability is entirely sufficient.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, that defendant's motion for judgment on the pleadings be GRANTED, and that the decision of the SSA be AFFIRMED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any

14

responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 21st day of July, 2009.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE